IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MICHAEL D. SILER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:11CV303 |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Michael Siler ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on May 22, 2007, alleging a disability onset date

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of January 14, 2007. (Tr. at 109-14, 115-22.)[2] His applications were denied initially (Tr. at 60-65) and upon reconsideration (Tr. at 67-75). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 78-79.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on October 15, 2009. (Tr. at 14.) During the course of the hearing, Plaintiff amended his alleged onset date to June 30, 2008, his fiftieth birthday. (Tr. at 14, 29.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 24) and, on March 16, 2011, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since June 30, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: insulin dependent diabetes mellitus, type II; history of open fracture of right great toe, nondisplaced; chronic kidney disease; and history of alcohol and substance abuse, in clinical remission (20 CFR 404.1520(c) and 416.920(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #8].

> . . . .
>
> 11. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he needs the sit/stand option in one hour increments. He is limited to occasional climbing of stairs and ramps and no climbing of ladders, ropes or scaffolds. He should avoid working at unprotected heights, around dangerous machinery or driving automotive equipment. He is limited to simple, routine, repetitive tasks, not performed in a production or quota based environment, and involving only simple, work-related decisions. He is limited to work in low-stress jobs without numerical production goals, that [sic] is unable to work at production rate (i.e. quota base, piecemeal or a conveyor belt). (stress) He is limited to work is a stable work setting or assignment.

(Tr. at 16-20.)

The ALJ then considered the vocational expert's testimony regarding the above residual functional capacity ("RFC") and determined that, although Plaintiff was unable to perform his past relevant work as a truck driver, he could perform other jobs that exist in significant numbers in the national economy. (Tr. at 23.) Plaintiff therefore was not under a "disability," as defined in the Act, from his alleged onset date through the date last insured. (Tr. at 24.)

## II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through

application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: insulin dependent diabetes mellitus, type II; history of open fracture of right great toe, nondisplaced; chronic kidney disease; and history of alcohol and substance abuse, in clinical remission (Tr. at 16.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with myriad nonexertional restrictions including a sit/stand option, limited climbing, and no exposure to hazardous equipment. (Tr. at 20.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to his past relevant work as a truck driver. However, he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other jobs available in the community and was therefore not disabled. (Tr. at 23-24.)

Plaintiff argues that substantial evidence fails to support the ALJ's findings. In particular, he alleges that the ALJ "erred by failing to fulfill her duty to further develop the medical evidence regarding the period after Plaintiff's amended alleged onset date of disability." (Pl.'s Br. [Doc. #10] at 3.) Plaintiff initially alleged a disability onset date of January 14, 2007, the date on or around which he became insulin-dependent for diabetes and could no longer hold a commercial driver's license ("CDL"). (Tr. at 21, 33-34.) At the administrative hearing, counsel amended Plaintiff's onset date to June 30, 2008, Plaintiff's fiftieth birthday, citing the more favorable medical and vocational rules for claimants age fifty and over. (Tr. at 29.) This shift in date created an alleged period of disability for which there are no medical treatment records. Plaintiff acknowledges that he received no treatment in 2008, and, although his counsel refers

7

to treatment just days before the hearing in October, 2009, that appointment involved a new diagnosis not at issue here. (Tr. at 28-29.) Plaintiff now claims that, faced with the sizable gap in the medical record, the ALJ was required to obtain an additional consultative medical examination before rendering her decision.[6]

In <u>Cook v. Heckler</u>, the Fourth Circuit noted that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." 783 F.2d 1168, 1173 (4th Cir. 1986) (citations omitted). To develop the record, the ALJ may subpoena and question witnesses, request additional evidence, and/or "purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [the claimant's] claim." 20 C.F.R. §§ 404.944, 404.950(d), 404.1519a, and 416.919a(b). "However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." <u>Clark v. Shalala</u>, 28 F.3d 828, 830–31 (8th Cir.1994). Moreover, the burden of establishing a prima facie entitlement to benefits never shifts from the claimant to the Commissioner. <u>See</u> <u>Hall</u>, 658 F.2d at 264-65; 42 U.S.C.A. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a).

Sections 404.1519a and 416.919a of the Social Security regulations provide the following "examples of when [the Commissioner] might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis":

---

[6] Plaintiff limits his challenge to his physical condition after June 30, 2008. Therefore, the Court will not address the need for any further mental evaluation.

(1) The additional evidence needed is not contained in the records of [the claimant's] medical sources;

(2) The evidence that may have been available from [the claimant's] treating or other medical sources cannot be obtained for reasons beyond [the claimant's] control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from [the claimant's] treating or other medical sources; or

(4) There is an indication of a change in your condition that is likely to affect [the claimant's] ability to work, or, if [the claimant is] a child, [his] functioning, but the current severity of [the claimant's] impairment is not established.

20 C.F.R. §§ 404.1519a(b) and 416.919a(b).

In the present case, Plaintiff underwent a prior consultative physical examination on January 12, 2008, performed by Dr. L. Howard Nabors. (Tr. at 361-63.) Dr. Nabors found that Plaintiff had "a fairly normal physical exam," despite his allegations of total disability. (Tr. at 362.) Although this examination took place more than five months before Plaintiff's amended onset date, it constitutes his most recent physical exam by any medical professional. Nowhere in Plaintiff's brief does he address how or why the ALJ erred in relying on Dr. Nabor's report, nor does Plaintiff suggest which of the above reasons for purchasing an additional examination might apply in his case.[7] To the contrary, Plaintiff explicitly adjusted his alleged onset date based, not on any alleged change in his condition, but on the greater likelihood of his being found disabled under the applicable rules for claimants fifty and over.

---

[7] Defendant argues that Plaintiff's failure to raise the need for an additional consultative examination at the hearing is fatal to his claim. (Def.'s Br. [Doc. #12] at 8.) However, the Supreme Court has held that the non-adversarial nature of Social Security proceedings renders administrative issue exhaustion inappropriate, i.e., an issue is not waived simply because Plaintiff failed to raise it during the administrative proceedings. Sims v. Apfel, 530 U.S. 103, 110-12 (2000).

Plaintiff appears to argue that his hearing testimony suggested increased limitations since the time of his last examination. However, a comparison of Plaintiff's testimony to his RFC assessment reveals that the ALJ incorporated all of Plaintiff's alleged physical limitations into his RFC, resulting in an RFC with *greater* restrictions than those supported by the medical evidence from *any* time period. As the ALJ correctly noted, two State agency physicians opined that Plaintiff could perform the full range of medium work (Tr. at 313-16, 367-70), and "his treating physicians have not placed any restriction on his activities or made any statement in support of his applications" (Tr. at 22). Moreover, when asked at his hearing why he felt he was unable to do any kind of work, Plaintiff replied, not with testimony as to his physical symptoms, but that he just didn't know what kind of work to do other than truck driving. (Tr. at 21, 36.) Nevertheless, the ALJ considered Plaintiff's allegations of significant foot pain and swelling and, on these allegations alone, limited Plaintiff to light work with a sit/stand option, only occasional climbing of stairs and ramps, and no climbing of ladders, ropes, or scaffolds. The RFC also precluded Plaintiff from working at unprotected heights and around dangerous machinery, as well as from driving automotive equipment. (Tr. at 20-21.) From these restrictions, "it is readily apparent that the ALJ gave the Plaintiff every benefit of the doubt." Wilson v. Astrue, No. 9:10-3008-BM, 2011 WL 5869763, at *5 (D.S.C. Nov. 22, 2011) (unpublished) (finding no error where the ALJ's RFC finding was more restrictive than that of the examiners).

Notably, the regulations on which Plaintiff's argument relies specifically state that the Commissioner "will consider not only existing medical reports, but also the disability interview form containing [the claimant's] allegations as well as other pertinent evidence in [the claimant's]

file" before ordering a consultative examination. 20 C.F.R. §§ 404.1519a(a) and 416.919a(a). Thus, such a decision does not rest on medical evidence alone, but whether the evidence as a whole is sufficient for the ALJ to fairly assess the claimant's impairments. See also 20 C.F.R. §§ 404.1519a(b) and 416.919a(b). Here, the evidence cited in the ALJ's decision, including Plaintiff's own testimony, amply support her findings even in the absence of a more recent consultative examination. As previously noted, it is Plaintiff's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. §§ 404.1512(a) and 416.912(a). The Plaintiff in the present case simply failed to meet this burden. Accordingly, the Court finds no error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 19th day of August, 2014.

/s/ Joi Elizabeth Peake
United States Magistrate Judge